IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MOTOROLA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C. A. No. 08-104-SLR |
| RESEARCH IN MOTION LIMITED | ) | |
| AND RESEARCH IN MOTION | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF MOTOROLA, INC.'S ANSWERING BRIEF CONDITIONALLY OPPOSING DEFENDANT RESEARCH IN MOTION'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

Josy W. Ingersoll (No. 1088)
Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
msquire@ycst.com

*Attorneys for Plaintiff Motorola, Inc.*

OF COUNSEL

Jesse J. Jenner
Steven Pepe
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036

Norman H. Beamer
ROPES & GRAY LLP
525 University Avenue
Palo Alto, CA 94301

Nicole M. Jantzi
ROPES & GRAY LLP
700 12th Street, NW, Suite 900
Washington, DC 20005

Dated: April 30, 2008

# TABLE OF CONTENTS

**Page**

I.    THE NATURE AND STAGE OF THE PROCEEDINGS.................................................1

II.   SUMMARY OF ARGUMENT ........................................................................................4

III.  COUNTERSTATEMENT OF FACTS ...........................................................................6

IV.  ARGUMENT....................................................................................................................8

      A.    Motorola Was The First To File, And Is Entitled To Its Choice Of Forum Unless RIM Can Justify Transfer ..................................................9

      B.    The Presence Of Unrelated Claims In The Dallas Action Does Not Justify Transfer.................................................................................11

      C.    The Section 1404(a) "*Jumara*" Factors Strongly Favor Retaining This Case In This Court......................................................................15

           1.    Plaintiff's Forum Preference As Manifested In The Original Choice...........16

           2.    Defendant's Preference.................................................................................16

           3.    Whether The Claim Arose Elsewhere ........................................................17

           4.    The Convenience Of The Parties As Indicated By Their Relative Physical And Financial Condition................................................17

           5.    The Convenience Of The Witnesses But Only To The Extent That The Witnesses May Actually Be Unavailable For Trial In One Of The Districts .............................................................................20

           6.    Practical Considerations That Could Make The Trial Easy, Expeditious Or Inexpensive..................................................................20

           7.    The Local Interest In Deciding Local Controversies At Home....................21

V.    CONCLUSION..............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Crowley,*
No. 04-1565, slip op. (D. Del. May 25, 2005)........................................................................20

*Akzona, Inc. v. E.I. Du Pont de Nemours & Co.,*
607 F. Supp. 227 (D. Del. 1984) ...........................................................................................14

*Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.,*
No. 06-187, 2006 WL 3783477 (D. Del. Dec. 21, 2006)..................................................12, 16

*Ballard Med. Prods. v. Concord Labs., Inc.,*
700 F. Supp. 796 (D. Del. 1988) ...........................................................................................14

*Bank of Am., N.A. v. S.I.P. Assets, LLC,*
No. 07-159, 2007 WL 2698192 (D. Del. Sept. 11, 2007) ......................................................14

*Boston Scientific Corp. v. Johnson & Johnson Inc.,*
No. 07-333, slip op. (D. Del. Jan. 24, 2008)...........................................................................8

*Cashedge, Inc. v. Yodlee, Inc.,*
No. 06-170, 2006 WL 2038504 (D. Del. July 19, 2006).........................................................14

*Critikon Inc. v. Becton Dickinson Vascular Access Inc.,*
821 F. Supp. 962 (D. Del. 1993) ...........................................................................................20

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.,*
No. 01-199, 2001 WL 1617186 (D. Del. Nov. 28, 2001).................................................13, 19

*Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.,*
185 F. Supp. 2d 407 (D. Del. 2002) ................................................................................13, 21

*E.E.O.C. v. Univ. of Pa.,*
850 F.2d 969 (3d Cir. 1988) .............................................................................................8, 10

*Genentech, Inc. v. Eli Lilly & Co.,*
998 F.2d 931 (Fed. Cir. 1993) ............................................................................................9, 10

*ICU Med., Inc. v. Rymed Techs., Inc.,*
No. 07-468, 2008 WL 205307 (D. Del. Jan. 23, 2008) ................................................14, 16, 21

*In re Innotron Diagnostics,*
800 F.2d 1077 (Fed. Cir. 1986) ...........................................................................................14

DB02:6785299.1

063528.1003

*Inpro II Licensing, S.A.R.L. v. Research In Motion Ltd.*,
   No. 03-1047, slip op. (D. Del. March 5, 2004) ................................................. 16, 21

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ....................................................... 5, 9, 15, 22

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
   77 F. Supp. 2d 505 (D. Del. 1999) ............................................... 18, 20

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
   518 F.3d 897 (Fed. Cir. 2008) ...................................................... 10, 12

*Motorola Inc. v. PC-Tel. Inc.*,
   58 F. Supp. 2d 349 (D. Del. 1999) ...................................................... 19

*Nice Sys., Inc. v. Witness Sys., Inc*,
   No. 06-311, 2006 WL 2946179 (D. Del. Oct. 12, 2006)................................. 13, 18

*Nilssen v. Osram Sylvania, Inc.*,
   No. 00-695, 2001 WL 34368395 (D. Del. May 1, 2001) ..................................... 14

*Pall Corp. v. Bentley Labs., Inc.*,
   523 F. Supp. 450 (D. Del. 1981) ............................................................ 14

*Praxair, Inc. v. ATMI, Inc.*,
   No. 03-1158, 2004 WL 883395 (D. Del. Apr. 20, 2004) ........................... 12, 15, 16

*Research in Motion Ltd. v. InPro II Licensing, S.A.R.L.*,
   No. 3:03-cv-2669-8, 2005 WL 659022 (N.D. Tex. Mar. 18, 2005)........................... 7

*Research In Motion Ltd. v. Visto Corp.*,
   457 F. Supp. 2d 708 (N.D. Tex. 2006) ....................................................... 13

*Siemens Med. Sys., Inc. v. Fonar Corp.*,
   No. 95-261, slip op. (D. Del. Nov. 13, 1995)................................................. 19

*SRU Biosystems, Inc. v. Hobbs*,
   No. 05-201, 2005 WL 2216889 (D. Del. Sept. 13, 2005) ..................................... 21

*Storage Tech. Corp. v. Cisco Sys.*,
   329 F.3d 823 (Fed. Cir. 2003) ............................................................... 9

*Taylor v. Ishida Co.*,
   No. 3:02-CV-0402-D, 2002 WL 1268028 (N.D. Tex. May 31, 2002)....................... 4

*Textron Innovations, Inc. v. Toro Co.*,
   No. 05-486, 2005 WL 2620196 (D. Del. Oct. 14, 2005)............................ 13, 16, 18

DB02:6785299.1

063528.1003

*Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*,
    882 F. Supp. 359 (D. Del. 1994) ...................................................................17

*Turn of the Century Solution, LP v. Int'l Rectifier Corp.*,
    No. 05-816, slip op. (D. Del. June 15, 2006)................................................16

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) .......................................................................................9

*VCode Holdings, Inc. v. Cognex Corp.*,
    No. 2:07-CV-138, 2007 WL 2238054 (E.D. Tex. Aug. 3, 2007)................................4

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.*,
    201 F. Supp. 2d 294 (D. Del. 2002) ............................................................14

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
    157 F.R.D. 215 (D. Del. 1993) ....................................................................17

*Winner Int'l Royalty Corp. v. Wang*,
    202 F.3d 1340 (Fed. Cir. 2000) ...................................................................9

## STATUTES

28 U.S.C. § 1404(a)....................................................................................passim

Motorola, Inc. conditionally opposes RIM's motion to transfer. For the reasons explained herein, if Motorola's choice of forum (the Eastern District of Texas) for its patent infringement claims against RIM is confirmed, then Motorola would not oppose RIM's motion to transfer this action to the Northern District of Texas. Therefore, Motorola respectfully proposes that this motion be held in abeyance until concurrent motions in Texas courts decide whether Motorola can keep its choice of forum for its patents. Absent that, Motorola would not consent to RIM's motion before this Court, and this motion should be denied.

## I.    THE NATURE AND STAGE OF THE PROCEEDINGS

Motorola commenced this action on February 16, 2008 (D.I. 1). The complaint, as amended (D.I. 5), seeks a declaratory judgment that nine patents owned by defendants Research In Motion Limited and Research In Motion Corporation (collectively, "RIM") are invalid and not infringed by Motorola. In its answer, RIM brought counterclaims against Motorola asserting that each of the nine RIM patents in suit is infringed by Motorola's products. (D.I. 18).

Also on February 16, Motorola commenced a patent infringement action against RIM in the Marshall Division of the Eastern District of Texas (2:08-CV-69-TJW) ("the Marshall action").[1] As amended, the complaint asserts that eleven Motorola patents are infringed by at least 23 of RIM's "BlackBerry" products. RIM has counterclaimed for a declaratory judgment of invalidity and noninfringement as to all eleven patents. (Beamer ¶¶ 2, 4). The Marshall action is unrelated to this action — here, RIM patents are asserted against Motorola products; in Marshall, completely different Motorola patents are asserted against completely different RIM products.

---

[1] Motorola is currently a party in another suit in that district involving some of the same Motorola patents (*Motorola v. Vtech Communications, Inc.*, 5:07-CV-00171). (Declaration of Norman H. Beamer ("Beamer"), ¶ 5).

Motorola brought these two actions because patent licensing negotiations between the parties had not resulted in a license, and a "standstill" agreement had expired at the end of the day on February 15, 2008.[2]  Apparently for the same reason, RIM also commenced an action on February 16 (although at least one hour after Motorola commenced this action), against Motorola in the Dallas Division of the Northern District of Texas ((No. 3-08CV0317-O) ("the Dallas action").  (Beamer ¶¶ 2, 6).  RIM's Dallas action is actually a complex aggregation of three entirely separate lawsuits:

- **RIM's patent infringement claims**:  RIM alleges infringement of the same nine RIM patents that are in suit in this Delaware action.  These claims are precisely the same as the counterclaims that RIM has brought here.  (Beamer ¶ 7).

- **RIM's declaratory judgment claims against Motorola's patents**:  RIM seeks declaratory judgment that the same eleven Motorola patents that Motorola is asserting in the Marshall action are invalid or not infringed.  These claims are precisely the same as the counterclaims that RIM brought in Marshall.  (Beamer ¶ 8).  On the other hand, this second group of claims is completely different from the first group of Dallas claims, and is completely different from Motorola's claims or RIM's counterclaims in Delaware.

- **RIM's antitrust/contract claims**:  RIM asserts an antitrust claim and related contract claims, alleging that Motorola supposedly demanded an exorbitant royalty rate for 76 of Motorola's "essential" patents (patents designated as "essential" to various telecommunications standards) after allegedly falsely promising to license those patents on reasonable terms.  The 76 patents that are involved in this third set of claims do *NOT*

---

[2] The Standstill Agreement was submitted as Exhibit A to the Declaration Of Brian Rivers, Esq. ("Rivers _") filed by RIM in this action (D.I. 16-1).

include any of the eleven "non-essential" Motorola patents that are the subject of RIM's second set of Dallas claims, or that Motorola is asserting in the Marshall action. In fact, Motorola has not asserted those 76 "essential" patents anywhere. (Beamer ¶ 9). Thus, *neither of the first two groups of Dallas claims, nor the claims in the Marshall action, nor the claims in this Delaware action, have anything to do with Motorola's "essential" patents involved in the third group of Dallas claims.*

Despite the fact that these three groups of claims brought in Dallas are totally separate and independent, RIM has compounded its procedural morass by moving in this Court to transfer this focused action to the Dallas Court (D.I. 15), and likewise moving in the Marshall action for transfer to Dallas. RIM attempts to portray its impractically cumbersome and unmanageable Dallas litigation as the ideal forum to which this Court and the Marshall Court should necessarily defer. In reality, however, RIM would use its unwieldy Dallas lawsuit as a blocking tactic to delay the patent infringement relief that Motorola seeks in Marshall.

To unravel this Gordian knot, Motorola has moved in the Dallas action to: (i) dismiss the antitrust and contract claims for failure to state a claim upon which relief can be granted; (ii) to the extent not dismissed, to bifurcate and stay the antitrust and contract claims pending resolution of the more triable patent claims; and (iii) to dismiss, stay or transfer to Marshall, RIM's declaratory judgment claims against Motorola's eleven patents that are also in suit in Marshall.[3] In this Dallas motion, Motorola further suggests, as a compromise, that if Motorola is permitted to try its patents in the forum of its choice (Marshall), then it would be appropriate to try RIM's patents in the forum of its choice (Dallas). To this end, Motorola is today also filing an opposition to RIM's motion to transfer the Marshall action to Dallas, on the same grounds as

---

[3] Motorola's brief in support of its Dallas motion is submitted herewith for the Court's information. (Beamer Exh. D).

Motorola's motion in Dallas. Motorola has suggested in the Dallas and Marshall submissions, as it suggests here, that the Courts in the three jurisdictions involved might coordinate and/or confer as to the proper recourse.[4]

Given the current stage of the proceedings in the three actions, Motorola *conditionally* opposes RIM's motion brought here. Motorola would not oppose this motion if Motorola's patent infringement claims brought in Marshall are permitted to go forward in Marshall, and RIM's duplicative counterclaims in Dallas, directed to those same patents, are dismissed, stayed or transferred. Under such circumstances, it would be acceptable for the RIM patents to be tried in the Dallas action. However, if Motorola is denied the opportunity to press its infringement claims in Marshall, Motorola would invoke its prerogative as the first-filed party in this action, to oppose RIM's motion here and put RIM to its burden to show why transfer is appropriate. RIM cannot meet this burden, because the factors that are typically considered in deciding transfer motions strongly favor retaining this action in this Court.

## II.    SUMMARY OF ARGUMENT

- If Motorola's choice of Marshall as the forum for its patent infringement claims against RIM is confirmed, then Motorola would not oppose RIM's motion to transfer this action to the Dallas Court. To determine whether or not that will be the case, Motorola respectfully proposes that this motion be held in abeyance until the motions in Dallas and Marshall are decided.

- If Motorola's choice of the Marshall forum is not confirmed, this action should go forward in this Court. RIM cannot meet its burden to show why this action should be

---

[4] *See VCode Holdings, Inc. v. Cognex Corp.*, No. 2:07-CV-138, 2007 WL 2238054, at *2 (E.D. Tex. Aug. 3, 2007) (indicating that Court conferred with the Court in the District of Minnesota regarding whether transfer would accomplish judicial economy); *Taylor v. Ishida Co.*, No. 3:02-CV-0402-D, 2002 WL 1268028, at *7-8 (N.D. Tex. May 31, 2002).

-4-

transferred.  Motorola filed this action one hour before RIM filed the corresponding action in

Dallas, and so this action is first filed.  Motorola only conditionally relies on this first-filed

status, however, because it recognizes, and indeed argues in Dallas and Marshall, that Courts

often treat such circumstances as essentially simultaneous, and as such give the patentee its

choice of forum.  However, if that argument is rejected in Dallas and Marshall, then it is only fair

also to accord this action the first filed status as to the RIM patents.  If so, this action should

remain in this Court, given that the "*Jumara*" factors weigh strongly against transfer.  For

example:

- Transfer of this action to Dallas would further burden an already overly-complex
  and cumbersome action.  The combination of three independent lawsuits in Dallas
  would delay resolution of issues that will be more expeditiously decided here, would
  be unduly expensive, and would risk jury confusion.

- There is no significant relevant presence of either party in Dallas.  RIM is a major
  international company with employees that are accustomed to traveling around the
  world.  RIM can hardly argue that Delaware is an inconvenient forum, given that it
  has regularly commenced its own infringement actions here.  In fact, RIM has
  previously brought lawsuits in Delaware that assert infringement of some of the
  same patents, or parents of patents, that are in suit in this action.

- Delaware is actually more convenient for this action than is Dallas.  The center of
  gravity of RIM's activities relevant to the patents in suit is Waterloo, Ontario,
  Canada, which is closer to Wilmington than Dallas.  The inventors for two of the
  patents in suit are within the subpoena power of Delaware — none is within the
  subpoena power of Dallas.

063528.1003

- Both Motorola and Research In Motion Corporation are incorporated in Delaware. Therefore, Delaware has an inherent interest in litigating this dispute, and RIM can hardly object to this forum given its decision to enjoy the benefits and protection of Delaware corporate status.

## III.    COUNTERSTATEMENT OF FACTS

Motorola, founded in 1928, is incorporated in Delaware, is principally located in Schaumburg, Illinois, and has numerous other domestic and international facilities and activities. Motorola has several operating business segments, including the Mobile Devices Segment, which designs, manufactures, sells and services wireless handsets, including the "Q" series of products that RIM accuses of infringing its patents. The Mobile Device segment is headquartered in Libertyville, Illinois, with other major facilities located in Plantation, Florida, and in Germany, Singapore, China, Brazil, England and India. Motorola's over 66,000 employees are located and travel worldwide. (Beamer Exh. A, pp. 1-2, 5, 16).

Motorola has been a leading innovator in wireless telecommunications technology for decades. As a result of its efforts, Motorola has been awarded an extensive portfolio of patents, including both "essential" patents (patents that must be practiced by anyone wishing to make a product that complies with a telecommunications "standard") and "non-essential" patents (those that are not required in order to be compliant with the "standard"). Dozens of companies, including many of Motorola's direct competitors, have taken licenses under Motorola's valuable patents, both "essential" and "non-essential." (Blasius ¶ 3).[5]

---

[5] Recognizing Motorola's pioneering efforts and industry leadership, telecommunications standards organizations regularly request that Motorola participate in those standards. As a result, Motorola's technology has been incorporated into many standards. (Blasius ¶ 3). ("Blasius" refers to the Declaration of Brian Blasius, submitted as Beamer Exh. E.)

063528.1003

The RIM parent defendant — Research In Motion Limited — is a Canadian company principally located in Waterloo, Ontario. The RIM wholly-owned United States subsidiary defendant — Research In Motion Corporation — is incorporated in Delaware, and has a small office in Irving, Texas, *infra*, p. 18. RIM has facilities in Canada (Waterloo, Mississauga, Ottawa, Halifax), the United States (California, Georgia, Washington, Texas and Illinois) and in Mexico, the Caribbean and Europe. The design, manufacture and assembly of the accused products take place in Waterloo, Canada. (Beamer ¶ 15, Exh. B, p. 28).[6] Seven of the RIM patents in suit were developed by RIM engineers at the RIM headquarters in Canada. The remaining two patents in suit were actually developed at Bell Laboratories in New Jersey, and were only purchased by RIM just prior to this lawsuit. (Beamer ¶¶ 11-12). RIM has over 8,300 employees worldwide. It appears that less than a dozen of RIM's employees are in the Dallas area. These few RIM employees are involved in licensing and standards. (Beamer Exh. B, p. 28, Rivers ¶¶ 1, 17).[7]

From 2003 until the end of 2007, RIM was one of Motorola's licensees, with rights and obligations under certain Motorola "essential" and "non-essential" patents. When it came time to discuss renewal of this license, Motorola offered RIM a license at royalty rates comparable to those offered to many other companies. (Blasius ¶¶ 4-5). RIM resisted — apparently because its much greater revenue, relative to 2003, would mean larger royalty payments. Because Motorola was not willing to capitulate to RIM's demand for special treatment, the parties have not been able to agree on a new license. After a "Standstill Agreement" expired at the "end of the day" on

---

[6] *See also Research in Motion Ltd. v. InPro II Licensing, S.A.R.L.*, No. 3:03-cv-2669-8, 2005 WL 659022, 1 (N.D. Tex. Mar. 18, 2005).

[7] RIM's brief cites the Rivers Declaration to support its statement that RIM's Irving facility is involved in engineering, management, sales and marketing. The Rivers Declaration, however, does not support this statement.

063528.1003

February 15, 2008, the parties commenced the current litigations.  (Blasius ¶ 7; Beamer ¶¶ 2-4, 6).

## IV.    ARGUMENT

The claims before this Court have identical counterparts in the Dallas Court.  This Court has Motorola's declaratory judgment claims directed against RIM's nine patents, and both Courts have RIM's mirror image patent infringement claims, asserting the same nine RIM patents against Motorola's products.[8]  The parties agree that these infringement and declaratory judgment claims involving RIM's patents should be pursued together in only one Court.  Furthermore, the parties agree, given this motion by RIM, that this Court should decide which Court should proceed.  Indeed, Motorola brought this action one hour before RIM commenced its Dallas action (Beamer ¶¶ 3, 6), and such first-filed status vests this Court with that power.  *Boston Scientific Corp. v. Johnson & Johnson Inc.*, No. 07-333, slip op. at 12 n.12 (D. Del. Jan. 24, 2008) (Robinson, J.)  (Beamer Exh. G) (explaining that the first court to have possession of the case must decide which venue moves forward with the case) (*quoting E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)).

As a threshold matter, however, Motorola respectfully suggests that this Court defer disposition of this motion until the Marshall and Dallas Courts decide the related procedural motions pending before them, *supra*, p. 3.  If that related motion practice allows Motorola's infringement action against RIM in Marshall to go forward, then Motorola would withdraw its opposition to this motion, and accede to RIM's request to transfer this case to Dallas, or stipulate to dismissing the case without prejudice.  Motorola would do so as a matter of consistency and fairness.

---

[8] Motorola has not filed an Answer in the Dallas Court, and so has not asserted counterpart declaratory judgment claims against RIM's patents there.

But, if Motorola is not allowed its choice of the Marshall forum for the Motorola patent infringement action, then Motorola opposes RIM's motion here. Absent Motorola's consent to transfer, RIM cannot satisfy its burden to show why transfer is justified. If Motorola adheres to its choice of this forum, that choice should control because Motorola was the first to file, and, more important, because the factors considered in deciding whether to transfer actions pursuant to 28 U.S.C. § 1404(a) strongly favor this forum.

### A.　Motorola Was The First To File, And Is Entitled To Its Choice Of Forum Unless RIM Can Justify Transfer

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of Section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). "The burden of establishing the need for transfer . . . rests with the movant, [a]nd 'in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed.'" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).[9]

Furthermore, where there is a patent infringement action pending in one District Court and a counterpart declaratory judgment action pending in a separate District Court involving the same patents, the "default" rule favors the forum of the first-filed action, whether or not it is the declaratory judgment action. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir.

---

[9] In reviewing a district court's decision regarding a motion to transfer under 28 U.S.C. § 1404(a), the Federal Circuit applies the law of the appropriate regional circuit. *Storage Tech. Corp. v. Cisco Sys.*, 329 F.3d 823, 836 (Fed. Cir. 2003); *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000).

DB02:6785299.1 063528.1003

1993); *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008).[10]  Because

Motorola filed this action one hour before RIM filed the Dallas action, then at least as a "default"

matter, Motorola's lawsuit in this Court is the first-filed suit involving the RIM patents.[11]

Although Motorola was first to file by an hour, Motorola recognizes that Courts have

treated such close timing as essentially simultaneous, and as such give the patentee its choice of

forum.  In fact, Motorola is so arguing in Dallas and Marshall, in support of its choice of

Marshall for its patent infringement action.  If such argument were applied here reciprocally,

then RIM's motion to transfer should be allowed.  However, if the Dallas and Marshall courts

instead grant RIM the status as first to file because of RIM's supposed time advantage in those

two districts,[12] then it is only fair to accord Motorola the first filed status here.  Therefore,

Motorola at this point in time conditionally relies on its first to file status.

Subject to such reciprocal treatment, Motorola submits that under the circumstances here,

where both parties were well aware of the expiration of the standstill period, where Motorola

---

[10] Notwithstanding the Federal Circuit's general deference to regional circuit law regarding 28 U.S.C. § 1404(a), *supra*, n. 9, this first to file rule is governed by Federal Circuit authority, because it "raises the issue of national uniformity in patent cases." *Genentech*, 998 F.2d at 937. In any event, Third Circuit authority is to like effect. *Univ. of Pa.*, 850 F.2d at 971-72, 976-77.

[11] RIM disingenuously asserts (RIM Br. at 5) that somehow Motorola's first-filed status should be disregarded because "Motorola's commencement of the electronic filing process on February 15 amounts to a breach of the parties' Standstill Agreement."  As explained in the Declarations of June M. Sutton and Monté T. Squire, Esq., Motorola complied with the written procedures of this Court in filing the Delaware Complaint on February 16.  It is specious for RIM to argue that logging onto a computer and preparing documents for filing according to courthouse procedures — as Motorola's Delaware counsel did for this complaint — is improper "commencement" of a lawsuit, while printing out numerous copies of a Complaint, signing those copies, communicating with the clerk regarding filing (see Rivers Exh. C), and then standing in front of the courthouse drop box waiting for a clock to change over to 00:01 am CST — as RIM's counsel did in Dallas — is proper.

[12] As explained in the Declaration of John M. Pickett (Beamer Exh. F), Motorola completed its filing in Marshall at 00:23 am CST on February 16, 2008, having commenced the electronic filing process at 00:01 am CST.  RIM apparently filed its paper Dallas complaint by dropping it in a lock box at 00:01 am CST on February 16 (Rivers Exh. C).

elected to bring its declaratory judgment action in Delaware shortly after midnight Eastern time, and RIM elected to wait until after midnight Central time to file in Dallas, if the first to file rule is appropriately applied, this action should remain here in Delaware.

### B.    The Presence Of Unrelated Claims In The Dallas Action Does Not Justify Transfer

In an attempt to override the first-to-file rule, RIM relies heavily on the fact that the Dallas action covers a broader range of claims and issues than this action. RIM asserts that the Dallas action is more "comprehensive" and proclaims that it is "indisputable" that it would be more efficient to try all the parties' claims in one action (RIM Br. at 12). Nothing could be further from the truth. RIM's Dallas action is presently mired in an unmanageable aggregation of three separate and independent lawsuits, *supra*, p. 2. Far from supporting transfer, the complex patchwork of unrelated claims in Dallas is a major factor militating *against* transfer to that forum. To attempt to try (1) the RIM patents, asserted against Motorola's products, together with (2) the Motorola patents, asserted against RIM's products; further combined with (3) RIM's antitrust and contract claims — would lead to complexity, inevitable delay and insurmountable risk of jury confusion. Put another way, RIM should not be rewarded for filing an unmanageable action in Dallas.

Indeed, Motorola separately brought this Delaware action and its Marshall action because it wanted to de-couple its affirmative patent claims against RIM from RIM's entirely different patent claims against Motorola, in order to avoid jury confusion and an overly-complicated trial. (Motorola chose Delaware and Marshall because of their substantial expertise in managing patent infringement cases in an efficient and economical manner; and because RIM has brought patent infringement actions in both districts and thus could not reasonably object to them.)

In any event, as the Federal Circuit recently explained, courts weighing the merits of competing venues should give little weight to which action is superficially broader. *Micron*, 518 F.3d at 903. Otherwise, one party could "simply . . . add a few additional claims" to tilt the analysis artificially in its favor, as RIM has done here. *Id.* Accordingly, "this consideration cannot be given undue weight because it is easily manipulated." *Id.* RIM is attempting in Dallas precisely what the Federal Circuit warned against — lumping together three unrelated sets of claims in the hope of heading off Motorola's choice of forum.

It makes no sense to argue that RIM's nine patents, asserted against Motorola's products, must in the interest of judicial economy be tried together with Motorola's eleven patents, asserted against RIM's products. As RIM's declarant admits, the nine RIM patents are directed to "speech compression" and to "features of keyboards used for wireless communication devices." (Rivers ¶ 13). In contrast, the Motorola patents in the Marshall action relate to "establishing data connections with the wireless networks, and identifying, retrieving, categorizing, and pushing to hand-held devices customized data from a data source." (Rivers ¶ 14). The two sets of patents are plainly unrelated. They involve different inventive entities, different inventors, different allegedly infringing products, and different specific technologies. *See Praxair, Inc. v. ATMI, Inc.*, No. 03-1158, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004) (Robinson, J.) ("While the patents may relate to the same technological field, they nonetheless involve different patents, claims, inventors, prosecution histories and a different set of alleged infringing activities.").[13]

---

[13] *See also Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*, No. 06-187, 2006 WL 3783477, at *3 (D. Del. Dec. 21, 2006) (holding that "pending litigation in Michigan involv[ing] different patents . . . is not a relevant consideration in favor of transfer").

DB02:6785299.1                                                                 063528.1003

RIM generalizes that both the RIM and Motorola products are "relevant to both the RIM and Motorola patents," and that there supposedly will be overlapping discovery if the actions are tried separately. (RIM Br. at 7). [14] This is untrue, and RIM provides no specifics to support these generalities. The mere fact that both sets of claims generally relate to cell phones is not a good enough reason to compel transfer from Motorola's selected forum. Notably, RIM attempted a similar argument before another Court, concerning "substantially similar technologies" that was summarily rejected: "Merely because the patents pertain to wireless transmission of email and other data does not, of course, show that they are so related that the litigation should be conducted in a single forum." *Research In Motion Ltd. v. Visto Corp.*, 457 F. Supp. 2d 708, 714 (N.D. Tex. 2006). And such arguments are routinely rejected in this District. [15]

The antitrust and contract claims brought by RIM in Dallas are even further afield. They all relate to RIM's allegation that Motorola supposedly demanded exorbitant rates for a license under 76 "essential" patents — patents that are not asserted in either the Dallas or the Marshall action, or indeed in *any* lawsuit in *any* jurisdiction. There is absolutely no overlap between the RIM patent claims at issue here and the Dallas antitrust and contract claims. In addition,

---

[14] Of course, the parties presumably will agree that any documents or depositions that are taken in one action may be used to full effect in the other action, should there be any need to do so.

[15] *See Textron Innovations, Inc. v. Toro Co.*, No. 05-486, 2005 WL 2620196, at *1, *3 (D. Del. Oct. 14, 2005) (holding that a lawsuit involving different patents related to a different category of mower technology "is not a relevant consideration in favor of transfer"); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199, 2001 WL 1617186, at *4 (D. Del. Nov. 28, 2001) (Robinson, J.) (refusing to transfer a case involving different patents even though the plaintiff admitted different patents at issue in both suits concern the same general area of technology); *Nice Sys., Inc. v. Witness Sys., Inc*, No. 06-311, 2006 WL 2946179, at *3 (D. Del. Oct. 12, 2006) (refusing to transfer although "the instant action involves some overlap of parties, products, and technologies with" actions pending in another district); *Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.*, 185 F. Supp. 2d 407, 412 (D. Del. 2002) (refusing to transfer action because action involving "related patents" was not "sufficiently related to this action to warrant transfer").

resolution of those non-patent causes of action will be immensely complicated, and it would only

further complicate matters to try RIM's patents in the same litigation.[16] *See ICU Med., Inc. v.*

*Rymed Techs., Inc.*, No. 07-468, 2008 WL 205307, at *4 (D. Del. Jan. 23, 2008) (declining to

transfer a patent action to another jurisdiction where the same patents and an unfair competition

claim were pending, where unfair competition claims were unrelated state law claims added to

"create" an interest in litigation in the second forum); *see also In re Innotron Diagnostics*,  800

F.2d 1077, 1085 (Fed. Cir. 1986) (explaining that "[a]voidance of prejudice and confusion is

served in" separating patent issues from antitrust issues); *Akzona, Inc. v. E.I. Du Pont de*

*Nemours & Co.*, 607 F. Supp. 227, 236 (D. Del. 1984) (explaining that "[m]ajor antitrust

litigation is often enormously time-consuming" and that the patent dispute "will be delayed

significantly if tried together with the antitrust issues").

     RIM's authorities do not support the notion that this action should be combined with

RIM's other unrelated claims.  In those cases, a number of the pertinent patents involved in the

transferee court were either identical to that of the transferor court, *Ballard Med. Prods. v.*

*Concord Labs., Inc.*, 700 F. Supp. 796, 801 (D. Del. 1988); *Pall Corp. v. Bentley Labs., Inc.*, 523

F. Supp. 450, 453 (D. Del. 1981); *Bank of Am., N.A. v. S.I.P. Assets, LLC*, No. 07-159, 2007 WL

2698192, at *3 (D. Del. Sept. 11, 2007); *Nilssen v. Osram Sylvania, Inc.*, No. 00-695, 2001 WL

34368395 (D. Del. May 1, 2001); or so closely related that they were asserted as prior art and

involved overlapping claim construction issues, *Cashedge, Inc. v. Yodlee, Inc.*, No. 06-170, 2006

WL 2038504, at *1, *2 (D. Del. July 19, 2006).[17] Here, the parties agree that the RIM patents

should be litigated in only one Court, but that overlap in and of itself does not justify transfer to

---

[16] The analysis required to resolve RIM's antitrust and contact claims is discussed in detail in
Motorola's motion in Dallas to dismiss or stay those claims.  (*See* Beamer Exh. D at 5, 28-29).

[17] *Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 296-97 (D. Del. 2002),
likewise involved closely related trademarks.

-14-

Dallas. As to the remaining claims in Dallas, RIM has failed to point to any overlapping claim construction or other issues between RIM's patents and Motorola's patents; nor is there any relation to the Dallas non-patent claims. "[A] finding of validity or infringement in the [proposed transferee forum] litigation is not relevant to the case before this court." *Praxair,* 2004 WL 883395, at *2.

### C.    The Section 1404(a) *"Jumara"* Factors Strongly Favor Retaining This Case In This Court

RIM also summons other "factors" in an attempt to support its motion, relying on *Jumara,* 55 F.3d at 879-80, which set forth "private interests" and "public interests" to assist courts with the Section 1404(a) analysis. Private interests include: (1) The plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses — but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

These *Jumara* factors are of no help to RIM — to the extent applicable, they confirm that Motorola's first-to-file choice of Delaware should prevail.[18]

---

[18] Motorola submits, as evidenced by their omission from RIM's brief, that at least public factors 1, 3, 5, and 6 are irrelevant to this motion and need not be discussed.

1.     **Plaintiff's Forum Preference As Manifested In The Original Choice**

In addition to the fact that Motorola was the first to file in this Court, Motorola is

incorporated in Delaware. Accordingly, Motorola's choice of forum should be afforded full

weight under the § 1404(a) analysis. *See Turn of the Century Solution, LP v. Int'l Rectifier

Corp.*, No. 05-816, slip op. at 4 (D. Del. June 15, 2006) (Robinson, J.) (Beamer Exh. H) ("The

deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the

forum for some legitimate reason."); *ICU Med.*, No. 07-468, 2008 WL 205307, at *2 ("A

corporation's decision to incorporate in a particular state is a rational and legitimate reason to

choose to litigate in that state.").

2.     **Defendant's Preference**

If Motorola's choice of Marshall to litigate the Motorola patents is not upheld, *supra*, p.

4, then RIM's choice of Dallas to litigate the RIM patents should be discounted for the same

reasons. Such even handed treatment would be appropriate, particularly given that RIM

Corporation is also incorporated in Delaware.[19] Also significant is the fact that RIM has

regularly chosen this district to prosecute patent infringement actions as a plaintiff. As

previously held in this District, RIM's arguments in favor of transfer are "disingenuous

considering that RIM Ltd. has brought infringement actions in the District of Delaware on five

previous occasions." *Inpro II Licensing, S.A.R.L. v. Research In Motion Ltd.*, No. 03-1047, slip

---

[19] *See ICU Med.*, 2008 WL 205307, at *3 (explaining that a defendant that chose to be a
Delaware corporation "cannot now complain because they are involved in litigation in
Delaware"); *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*, No. 06-187, 2006 WL 3783477, at
*2 (D. Del. Dec. 21, 2006) ("[H]aving received the benefits of Delaware incorporation, a
Defendant cannot now complain that another corporation has chosen to sue it here."); *Textron
Innovations*, 2005 WL 2620196, at *2 ("[H]aving received the benefits of Delaware
incorporation, [a defendant] cannot now complain that another corporation has chosen to sue it
here."); *Praxair*, 2004 WL 883395, at *2 ("By availing themselves of the advantages of
Delaware's corporate laws, defendants have voluntarily exposed themselves to the risk of suit in
Delaware.").

op. at 4 & n.5 (D. Del. March 5, 2004) (Beamer Exh. I).[20]  Indeed, RIM previously brought a

patent infringement action in Delaware asserting one of the patents that it asserts by counterclaim

in this action, and brought yet another action in which it asserted the parent of one of the patents

asserted here.[21]

### 3.    Whether The Claim Arose Elsewhere

The only patents at issue here are RIM's patents.  The engineering and design activities

for seven of the RIM patents occurred in RIM Limited's facilities in Canada, closer to this forum

than the Eastern District of Texas.  (Beamer ¶ 12).  The remaining two RIM patents were

developed at Bell Laboratories in New Jersey, within this Court's subpoena power.  (Beamer

¶ 11).  In addition, the allegedly infringing Motorola phones are sold nationwide, including in

Delaware.  Accordingly, this factor favors retaining the case with this Court.

### 4.    The Convenience Of The Parties As Indicated By Their Relative Physical And Financial Condition

RIM Corporation is incorporated in Delaware, and therefore RIM can hardly complain

that Delaware is an inconvenient forum.  *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157

F.R.D. 215, 218 (D. Del. 1993) (Given "Visioncare's status as a Delaware corporation ... [i]n

some senses, Delaware is Visioncare's home"; such corporations "should not be successful in

arguing that litigation in their state of incorporation is inconvenient"); *Tuff Torq Corp. v. Hydro-*

*Gear Ltd. P'ship*, 882 F. Supp. 359, 363 (D. Del. 1994) ("'as a corporate citizen of Delaware,

---

[20] In particular, these actions include *Research In Motion v. Glenyare*, Case No. 01-CV-322, filed on May 16, 2001 (patent infringement action before the Honorable Roderick R. McKelvie); *Research In Motion v. Good Tech., Inc.*, Case No. 02-CV-556, filed on June 19, 2002 (patent infringement action before the Honorable Joseph J. Farnan); *Research In Motion v. Handspring, Inc.*, Case No. 02-CY-1480, filed on September 18, 2002 (patent infringement action before Judge Farnan).  In *Good Tech.*, RIM successfully opposed a motion to transfer the case from Delaware to Texas.  (D.I. 129 (March 23, 2003).

[21] *Handspring* (asserting U.S. Patent No. 6,452,588); *Good Tech.* (asserting U.S. Patent No. 6,396,482, parent of U.S. Patent No. 6,489,950).

both the corporation and its managers must anticipate the possibility of being hauled into court here'") (citation omitted).[22]

The fact that there is a small RIM office in Irving, Texas, in the Dallas area, does not present a significant convenience issue, given the overwhelmingly more significant presence of RIM in Canada and elsewhere. The Irving facility, which is limited to licensing activities and standards administration, has only minor relevance to the issues in the case — whether RIM's patents are valid and whether Motorola's products infringe RIM's patents. Motorola understands that the square footage of the leased space of the Irving facility is a tiny fraction of RIM's facilities in Waterloo, Ontario, Canada, and that there are a few dozen employees in Irving, compared to RIM's overall employee count of over 8,300. (Rivers ¶ 1, Beamer ¶¶ 15, Exh. B, p. 28). RIM's purported negotiation witnesses and other connections to Dallas are only tangentially relevant to the RIM patent claims. Moreover, RIM's own declarant recently moved from Texas to Canada — ostensibly because the center of RIM's operations is in Canada. (Beamer ¶ 16).[23] The seven RIM patents in suit that were actually invented by RIM employees were invented in Waterloo, 524 miles from Wilmington, but 1,373 miles from Dallas. (Beamer ¶ 12). Any relevant RIM witnesses are much closer to this Court.[24] The two recently-purchased RIM

---

[22] RIM's frequent litigation as a plaintiff in this district belies any claim of inconvenience. *See supra* Section IV.C.2; *see also Textron Innovations*, 2005 WL 2620196, at *2 ("[i]ndeed, it is difficult for the court to find any inconvenience to [a Defendant] when it has previously chosen this forum in order to litigate its own patent infringement claims").

[23] In any event, if needed at trial, RIM can compel its employees to appear at trial. "[T]he convenience of witnesses that are employees of a party carries no weight because the parties are obligated to procure their attendance at trial." *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999); *see also Nice Sys.*, 2006 WL 2946179, at *2 ("Employee witnesses, however, are not part of the analysis of this factor because they are presumed willing to testify at trial.").

[24] To the extent that counsel's convenience matters, RIM's lead counsel is located in Boston, Massachusetts, much closer to this Court than Dallas.

patents in suit were invented in New Jersey, within the subpoena reach of this District, but

thousands of miles away from Dallas.[25] (Beamer ¶ 11). Thus, with respect to the RIM claims,

Delaware is actually a more convenient forum for RIM (and Motorola) than Dallas.

In perspective, Motorola and RIM are major international companies with domestic and

internationally located facilities and activities. The employees of each are located and travel

worldwide. Motorola's headquarters is located in Schaumburg, Illinois and RIM Limited's

headquarters is located in Waterloo, Ontario, Canada. Their businesses, including sales

activities, are not limited to where the companies are headquartered. The vast majority of

Motorola's and RIM's employees are nowhere near Dallas and either district will be equally

convenient for these employees. These facts temper any purported inconvenience from litigating

in Delaware. "[B]eing a company engaged in business throughout the United States, the claim

that litigation away from the most convenient forum is burdensome is somewhat suspect."

*Siemens Med. Sys., Inc. v. Fonar Corp.*, No. 95-261, slip op. at 9 (D. Del. Nov. 13, 1995)

(Robinson, J.) (Beamer Exh. J); *see also Cypress Semiconductor Corp. v. Integrated Circuit Sys.,

Inc.*, No. 01-199, 2001 WL 1617186, at *4 (D. Del. Nov. 28, 2001) (Robinson, J.) (holding that

inconvenience based on expense was not compelling for "national corporations with millions of

dollars in annual revenue"); *Motorola Inc. v. PC-Tel. Inc.*, 58 F. Supp. 2d 349, 358 (D. Del.

1999) (holding that when the party seeking transfer is a multimillion dollar company, unless the

---

[25] Motorola's presence in Dallas is not significant to the transfer analysis. No key Motorola employee witnesses resident in Dallas have been identified. There are only a few Motorola employees assigned to the Motorola business segment that is most pertinent to this lawsuit, and none appears to be a potential witness. (Declaration of Lauren Allen). In any event, should there be any such witnesses, Motorola is willing to have them testify in Delaware.

company can articulate "some unique or unexpected burden" associated with litigating in a distant forum, this factor only weighs slightly in favor of transfer).[26]

### 5.    The Convenience Of The Witnesses But Only To The Extent That The Witnesses May Actually Be Unavailable For Trial In One Of The Districts

"[T]he convenience of witnesses that are employees of a party carries no weight because the parties are obligated to procure their attendance at trial." *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999).  With respect to non-party witnesses, RIM has failed to identify any non-party witness with testimony relevant to the RIM patents for whom it would be easier to testify in Dallas.  Importantly, the inventors of RIM's recently-purchased Lucent patents live in New Jersey, within the subpoena power of this Court — not Dallas.  (Beamer ¶ 11.)

### 6.    Practical Considerations That Could Make The Trial Easy, Expeditious Or Inexpensive

As demonstrated *supra*, Section IV.B, there is hardly any overlap between the RIM patent claims at issue, and either the Motorola patent claims or the antitrust/contract claims in Dallas.  There is unlikely to be any substantial duplication of witnesses or evidence.  Far from supporting RIM's motion, this factor militates against transfer, because the Dallas action will be more difficult, time consuming and expensive to prepare and try.

---

[26] A related factor is "the location of books and records."  However, the location of books and records is of little import, given the current state of technology.  *Critikon Inc. v. Becton Dickinson Vascular Access Inc.,* 821 F. Supp. 962, 966-67 (D. Del. 1993) ("Regardless of where trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial"); *Adams v. Crowley*, No. 04-1565, slip op. at 6 (D. Del. May 25, 2005) (Robinson, J.) (Beamer Exh. K) (holding that "most discovery will be taken in the same fashion regardless of where trial may proceed").

### 7.    The Local Interest In Deciding Local Controversies At Home

RIM's frequent use of this Court negates any reliance on the local interest factor in support of transfer. *Inpro II v. Research In Motion Ltd.*, No. 03-1047, slip op. at 4-5 (Beamer Exh. I).  Moreover, Delaware has a local interest in resolving disputes between Delaware corporations. *Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.*, 185 F. Supp. 2d 407, 412 (D. Del. 2002) ("Delaware has an interest in adjudicating this action because it involves two Delaware corporations."); *SRU Biosystems, Inc. v. Hobbs*, No. 05-201, 2005 WL 2216889, at *3 (D. Del. Sept. 13, 2005) (Robinson, J.) (noting that the Defendant "has enjoyed the benefits and protections" of Delaware corporate law and that "the state has an interest in litigation regarding companies like [defendant] that are incorporated in its jurisdiction").

As for RIM's patent claims, no other jurisdiction has a greater interest than Delaware, as patent rights are national is scope. *ICU Med., Inc.,* 2008 WL 205307, at *3 (noting that "rights determined in patent cases are national in scope").

-21-

## V.    CONCLUSION

Motorola would not oppose this motion if Motorola's patent infringement claims in

Marshall are permitted to go forward in Marshall, and RIM's Dallas counterclaims directed to

those patents are dismissed, stayed or transferred in favor of the Marshall action. Therefore,

pending resolution of that contingency, Motorola respectfully proposes that this motion be held

in abeyance until the pertinent procedural motions in Dallas and Marshall are decided.

However, if Motorola is not permitted to proceed in Marshall, this action should go

forward in this Court, and RIM's motion to transfer should be denied. Motorola filed this action

before RIM filed the corresponding action in Dallas. As the first filed action, this action should

remain in this Court, because transfer to Dallas would unduly delay and complicate resolution of

the issues here, and because the "*Jumara*" factors weigh strongly against transfer.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
msquire@ycst.com

*Attorneys for Plaintiff Motorola, Inc.*

OF COUNSEL:

Jesse J. Jenner
Steven Pepe
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036

Norman H. Beamer
ROPES & GRAY LLP
525 University Avenue
Palo Alto, CA 94301

Nicole M. Jantzi
ROPES & GRAY LLP
700 12th Street, NW, Suite 900
Washington, DC 20005

Dated: April 30, 2008

-22-

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2008, I caused to be electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Patricia Smink Rogowski, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P. O. Box 2207
> Wilmington, DE 19899

I further certify that on April 30, 2008, true and correct copies of the foregoing document will be served by e-mail and hand delivery on the above listed counsel and on the following non-registered participants as indicated below:

### BY E-MAIL

William F. Lee, Esquire [william.lee@wilmerhale.com]
Michelle D. Miller, Esquire [michelle.miller@wilmerhale.com]
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

William J. Bohler [william.bohler@wilmerhale.com]
Wilmer Cutler Pickering Hale and Dorr LLP
1117 California Avenue
Palo Alto, CA 94304

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
Elena C. Norman (No. 4780)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
msquire@ycst.com